# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **RHONDA F. LAMB** | **CIVIL ACTION NO. 17-0207** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **ASHFORD PLACE APARTMENTS, LLC, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 22] filed by Defendants Ashford Place Apartments, LLC, Heather Bamburg, and MRC Development, LLC. Plaintiff Rhonda F. Lamb opposes the motion. [Doc. No. 26]. For reasons assigned below, the Motion for Summary Judgment is GRANTED.

**I.    FACTS AND PROCEDURAL HISTORY**

On January 29, 2015, Plaintiff Rhonda F. Lamb and Defendant Ashford Place Apartments, LLC ("Ashford"), acting through its property manager, MRC Development, LLC, executed an apartment lease entitled, "Residential Lease Agreement" ("the Lease"). [Doc. No. 22-3]. The Lease remained effective through the dates pertinent to this proceeding.

On either January 5 or 6, 2016, Plaintiff informed Ashford's management that she smelled a burning odor[1] emanating from her apartment's heating unit. She then contacted the Ouachita Parish Fire Department, which investigated and determined that the odor was likely dust burning off of the heating unit. Ashford's head of maintenance, Bruce Robinson, checked the unit and agreed that the odor was dust burning off of the heating coils. [Doc. No. 22-4, p. 3].

---

[1] The parties appear to use the terms "odor," "smoke," and "fumes" interchangeably.

Thereafter, on either January 5 or 6, 2016, Plaintiff again reported a burning odor. Ashford contacted Delancey Service Company, which inspected the heating unit and recommended replacing the motor. Robinson replaced the motor with a new motor on January 6, 2016. [Doc. Nos. 22-4, pp. 3-5; 26, p. 4]. After he replaced the motor, according to Defendants, the heating unit was working properly. [Doc. No. 22-4, p. 3].

According to Ashford's property manager, Defendant Heather Bamburg, Plaintiff called later that evening to again report an odor. [Doc. No. 22-4, p. 3]. Bamburg states that Robinson investigated, did not smell anything, and could not find anything wrong with the heating unit. *Id.*

After Robinson checked it, Plaintiff started the heating unit and claims that she "was suddenly overcome by smoke fumes . . . ." [Doc. No. 26, p. 4]. Plaintiff then called Ashford's management again to report a burning odor. [Doc. No. 22-4, p. 3]. Plaintiff also called the Ouachita Parish Fire Department. [Doc. No. 26, p. 4]. Bamburg maintains that she and Robinson went to inspect the apartment after receiving Plaintiff's call. *Id.*

The Fire Department arrived and treated Plaintiff. [Doc. No. 26-5, p. 15]. The Fire Department entered the apartment and found light smoke. *Id.* The Fire Department recounted that Ashford "maintenance persons reported [that the] furnace fan motor overheated." *Id.* It also reported that American Medical Response transported Plaintiff to the hospital. *Id.* at 2. According to Bamburg, Plaintiff stayed in a hotel that night. [Doc. No. 22-4, p. 3].

On January 7, 2016, Robinson replaced the motor a second time. [Doc. No. 22-4, p. 1]. Plaintiff states that "[t]here were no difficulties with the operation of the heater unit after that substitution." [Doc. No. 26, p. 5]. Bamburg states that she called Klean King the same day to clean Plaintiff's apartment's ducts, but Klean King could not arrive until January 8, 2016. Bamburg also

maintains that Plaintiff stayed in the hotel a second night on January 7, 2016. [Doc. No. 22-4, p. 3].

Klean King cleaned the ducts on January 8, 2016. *Id.* at 7. Bamburg states that she then notified Plaintiff that her apartment was ready for Plaintiff to return. *Id.* at 3.

Plaintiff filed suit in state court on November 18, 2016, claiming that she suffers "from hyperactive airway disease as a result of the inhalation of smoke and nauseous fumes emitting from the defective air conditioning/hearing unit . . . ." [Doc. No. 1-1]. Plaintiff alleges, specifically, that her "injuries were not the result of the first reported incident of smoke smell which was addressed with a replacement motor, but *after* Ashford Place maintenance employees replaced that blower motor. That replacement motor was either installed improperly, or was the wrong part . . . ." [Doc. No. 26, p. 6].

Defendants removed the proceeding to this Court on January 27, 2017. [Doc. No. 1]. Defendants filed the instant Motion for Summary Judgment on January 11, 2018. [Doc. No. 22]. Plaintiff responded to Defendants' motion on January 22, 2018 [Doc. No. 26], and Defendants replied on January 31, 2018 [Doc. No. 31].

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a

reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[2]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is

---

[2] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### B. Assumption of Responsibility By Lessee

Citing LA. REV. STAT. 9:3221, Defendants argue that they are not liable for any alleged defect in Plaintiff's apartment because, under the terms of the Lease, Plaintiff assumed full responsibility and liability for the condition of the apartment, improvements, equipment, and appurtenances. [Doc. No. 22, p. 2]. Section 3221 provides:

> Notwithstanding the provisions of Louisiana Civil Code Article 2699, the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.

LA. REV. STAT. 9:3221.

Here, the Lease provides in pertinent part:

> 30. INDEMNIFICATION. Resident assumes full responsibility and liability for the Leased Premises, and all improvements, equipment and appurtenances thereto. The responsibility and liability assumed hereunder shall include, without limitation, all liability assumable by a Resident under Louisiana Revised Statutes 9:3633. To the maximum extent allowed under applicable law, this assumption of responsibility and liability shall be fully co-extensive with the legal responsibilities of the Landlord

5

> (both as Landlord and owner) and Management to all persons. Resident specifically agrees to defend, protect and indemnify Landlord and Management, and hold Landlord and Management harmless, against any and all responsibility, liability, loss, expenses, and other costs of whatever kind arising from all suits, claims, demands and actions asserted by any person (including without limitation Resident or its agents, employees or invitees) and arising directly or indirectly out of any occurrence on or about the Leased Premises or out of any of the Resident's uses on or about the Leased Premises, whether by the Landlord, Management, the Resident or others. The obligations of the Resident to the Landlord and Management under this section shall not depend upon the existence of fault or negligence but shall apply whether or not Resident, Management, or Landlord is at fault and shall include all legal liabilities arising without fault. Resident shall further indemnify Landlord and Management against all liability, expenses and losses incurred by Landlord and Management as a result of (a) failure by the Resident to perform any covenant required to be performed by Resident hereunder; (b) any accident, injury or damage occurring on the Leased Premises resulting from any reason whatsoever, including without limitation, the condition, maintenance or operation thereof; or (c) Resident's failure to comply with any requirements of any government authority. "Expenses" shall include court costs, costs of defense and expert's and attorney's fees.

[Doc. No. 22-3, p. 6].

The Court finds that this provision clearly and unambiguously expresses the parties' intent and that, consequently, Plaintiff assumed responsibility for the leased premises.[3] Thus, under LA. REV. STAT. 9:3221,[4] Defendants are not liable for the alleged defect (or Plaintiff's

---

[3] *See Briggs v. 2901 I-10*, L.L.C., 2014-0386 (La. App. 4 Cir. 9/25/14), 150 So. 3d 930, 932 (finding that lessee assumed responsibility by agreeing to the following: "Lessee hereby assumes responsibility for the condition of the Leased premises and Lessor shall not be liable to Lessee or anyone who derives his right to be thereon from the Lessee, for any injury, death or damages caused by any defect in the Leased Premises."); *Altvater v. LaBranche Properties, Inc.*, 2004-1484 (La. App. 4 Cir. 4/20/05), 901 So. 2d 584, 586; *Dufrene v. Kaiser Aluminum & Chem. Corp.*, 572 So. 2d 771, 773 (La. Ct. App. 1990); *Meyers v. Drewes*, 196 So. 2d 607, 611 (La. Ct. App. 1967).

[4] Plaintiff argues that LA. CIV. CODE art. 2699 controls. [Doc. No. 26, pp. 7-8]. However, LA. REV. STAT. 9:3221 applies "[n]otwithstanding the provisions of Louisiana Civil Code Article 2699 . . . ." Moreover, "La. C.C. art. 2699 does not supersede the provisions of La. R.S. 9:3221 . . . ." *Stuckey v. Riverstone Residential SC, LP*, 2008-1770 (La. App. 1 Cir. 8/5/09), 21 So. 3d 970, 974. "Louisiana Revised Statute[] 9:3221 is . . . expressly recognized as not subject to the provisions of La. C.C. art. 2699." *Id.*

alleged resultant injuries) unless Defendants "knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time."

Plaintiff does not identify the defect that Defendants allegedly knew of. Plaintiff alleges that the replacement motor was *either* installed improperly or was the wrong part.[5] [Doc. No. 26, p. 10 (emphasis added)]. Without specifying which alleged defect caused harm (or providing evidence of a specific defect), there is no genuine dispute that Defendants knew of a specific defect before Plaintiff suffered her alleged injuries.[6]

There is also no genuine dispute concerning whether Defendants, within a reasonable time, failed to remedy a defect of which Plaintiff provided notice.[7] Of emphasis, Plaintiff alleges that her "injuries were not the result of the first reported incident of smoke smell which was addressed with a replacement motor, but *after* Ashford Place maintenance employees replaced that blower motor." [Doc. No. 26, p. 6]. According to Bamburg, Robinson replaced the first motor with a new motor on January 6, 2016, and reported that the heating unit was working properly. [Doc. No. 22-4, p. 3-5]. Plaintiff did not provide notice of the odor *from the replaced motor* until the evening of January 6, 2016. [Doc. No. 22-4, p. 3].

---

Plaintiff also argues that LA. CIV. CODE art. 2004 applies. [Doc. No. 26, p. 9]. However, like Article 2699, Article 2004 does "not supersede La. R.S. 9:3221." *Stuckey*, 21 So. 3d at 975.

[5] Plaintiff even writes that "[h]ow the fire/smoke event occurred" is a "significant question of material fact . . . ." [Doc. No. 26]. While this is certainly a question of fact, it does not create a genuine *dispute* of material fact.

[6] Moreover, Bamburg avers that she "had no prior knowledge concerning the alleged issues with the air heat and air unit reported by [Plaintiff]." [Doc. No. 22-4, p. 1].

[7] Aside from one cursory remark that Defendants "failed to remedy the conditions timely," Plaintiff makes no argument regarding untimely remediation. [*See* Doc. No. 26, p. 19].

7

Following Plaintiff's first report of fumes, Robinson investigated, did not smell anything, and could not find anything wrong with the heating unit. [Doc. No. 22-4, p. 3]. As Plaintiff offers no evidence to the contrary, she does not genuinely dispute that, at this point, there was no defect—of which Defendants received notice—to remedy.

Following Plaintiff's second report of smoke fumes later that evening, Bamburg and Robinson went to inspect the apartment. *Id.* Plaintiff, however, suffered her alleged injuries before Bamburg and Robinson arrived. [Doc. No. 22-4, p. 3]. In that respect, Plaintiff offers no evidence that Bamburg and Robinson had a reasonable opportunity to remedy the defect, of which they received notice, before Plaintiff suffered injury.[8] *See Meyers*, 196 So. 2d at 611 ("[T]he lessee has no claim for any damage suffered by him by reason of any vices or defects in the leased property, or the consequences thereof, unless such damage is suffered *After* [sic] the lessor has had notice of such vices or defects and has failed to take action toward remedying them.") (emphasis added).[9]

Finally, Plaintiff suggests that Defendants *should have known* of the defect:[10] "Since

---

[8] Neither party cites any evidence specifying how long it took Bamburg and Robinson to respond.

[9] The Court reiterates that Robinson replaced the motor a second time on January 7, 2016. [Doc. No. 22-4, p. 1]. Plaintiff states that "[t]here were no difficulties with the operation of the heater unit after that substitution." [Doc. No. 26, p. 5]. Klean King also cleaned the ducts on January 8, 2016. [Doc. No. 22-4, p. 7]. These remediation efforts, however, are largely irrelevant considering that Plaintiff's alleged injuries arose the day before. *See, e.g. Stuckey*, 21 So. 3d at 979 (affirming summary judgment because the "defendants did not know and did not have reason to know of the alleged mold until their receipt of [the plaintiff's] letter . . . and that upon receiving such notice, the defendants sought to investigate and remedy the claimed condition within a reasonable time.").

[10] Once more, Plaintiff fails to identify a particular defect.

[Defendants] performed the work in house, they were certainly aware of their own actions . . . ." [Doc. No. 26, p. 10]. Plaintiff, however, provides no evidence[11] of when, how, or why Defendants should have known, *before* she reported fumes,[12] that Robinson installed the first replacement motor incorrectly[13] or that Robinson installed either the wrong motor or a defective motor.[14]

---

[11] Citing *Ford v. Bienvenu*, 95-1675 (La. App. 4 Cir. 4/24/96), 673 So. 2d 1198, and *Wallace v. Helmer Directional Drilling Inc.*, 93–901 (La.App. 3 Cir. 7/13/94), 641 So. 2d 624, Plaintiff suggests that Defendants bear the burden of proving that they should not have known of a defect. [Doc. No. 26, p. 12]. *Ford*, for example, held that the defendant's affidavit did not "negate the possibility that 'he should have known' of the alleged defect." *Ford*, 673 So. 2d at 1200. However, as explained in *Graubarth v. French Mkt. Corp.*, 2007-0416 (La. App. 4 Cir. 10/24/07), 970 So. 2d 660, 667, *Ford* and *Wallace* were decided prior to the amendment of LA. CODE CIV. PROC. art. 966 ("Motion for summary judgment; procedure"). "Prior to the amendment, summary judgments were not favored. With the amendment, summary judgments are favored and the burden of proof shifts to [plaintiff] once [defendants] negate[] a necessary element of [the plaintiff's] claim. *Graubarth*, 970 So. 2d at 667. Now, the burden of establishing that a defendant should have known of a defect definitively rests with plaintiffs. *See Briggs*, 150 So. 3d at 933 (observing that the plaintiff carries the burden of proof).

[12] After Plaintiff reported fumes, Defendants were on notice of a possible defect. Consequently, whether Defendants *should have known* of a defect at that point is irrelevant.

[13] Of note, Plaintiff states that "[t]here were no difficulties with the operation of the heater unit after" Robinson—the same individual Plaintiff suggests negligently installed the first replacement motor—replaced the motor a second time. [Doc. No. 26, p. 5].

[14] To reiterate, there is no evidence that Bamburg and Robinson had a reasonable opportunity, before Plaintiff allegedly suffered injury, to inspect and discover a defect after Plaintiff notified them of a problem. *See Chau v. Takee Outee of Bourbon, Inc.*, 97-1166 (La. App. 4 Cir. 2/11/98), 707 So. 2d 495, 498 ("In view of the statute's purpose of relieving owner lessors of some liability when the lease shifts responsibility for the premises to the lessee, the phrase 'should have known' in the statute should not be construed to impose expansive burdens upon the owner lessor."); *see also Stuckey*, 21 So. 3d at 979 (holding that evidence suggesting that the defendants should have known of the *potential* for the development of a defect (mold) "does not rise to evidence creating a genuine issue of material fact on the issue of whether the defendants should have known" of the defect); *Briggs*, 150 So. 3d at 933 (affirming summary judgment against plaintiff because "[s]he has offered no factual support for her contention that the property owner should have known of the installation defect . . . ."); *Pillow v. Roymar Ltd.*

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 22] is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 22nd day of February, 2018.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

*P'ship*, 15-730 (La. App. 5 Cir. 6/30/16), 197 So. 3d 348 (finding that evidence that general partner only "look[ed] around" the property rather than inspecting it did not create "a genuine issue of material fact on the issue of whether [defendant] should have known of the presence of the loose handrail, the defect . . . ."); *Graubarth*, 970 So. 2d at 667; *Leonard v. Am. Oil Co.*, No. CIV. A. 90-1321, 1991 WL 213919, at *2 (E.D. La. Oct. 15, 1991); *Nelson v. Torian*, 96-176 (La. App. 3 Cir. 6/26/96), 676 So. 2d 773, 778.